UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINSTON BOWERBANK, | **COMPLAINT** |
| Plaintiff, | Docket: |
| -against- | |
| THE CITY OF NEW YORK, DETECTIVE STEPHEN LALCHAN, AND DETECTIVE KEVIN DESORMEAU, | **JURY TRIAL DEMANDED** |
| Defendants. | |

*"These defendants are charged with fabricating the details of an arrest—seemingly out of thin air—in gross violation of their training, NYPD protocol, and the law," Manhattan District Attorney Cyrus R. Vance in a statement concerning Detective Kevin Desormeau's perjury charges. "When members of law enforcement commit misconduct, they threaten the credibility of our work and the safety of the citizens whom we are sworn to protect."*

## INTRODUCTION

1.      On March 15, 2014, at approximately 6:20 PM, Mr. Winston Bowerbank, then 61 years old, was sitting in the driver's seat of his friend's car while his other friend, Christopher Williams, sat in the front passenger seat. It was a balmy Saturday evening. They were chatting with the engine running as the sun began to set. Winston Bowerbank was not violating the rules of the road, nor committing any crimes. The vehicle was parked legally near the intersection of 118 Avenue and 228 Street in Queens, New York. Unbeknownst to Winston Bowerbank, he would soon be approached by a highly decorated, and now-notorious former NYPD officer with a perjury conviction –Kevin Desormeau— who had a habit of inventing drug deals and a practice of arresting innocent men. And this is precisely what occurred.

1

2.     Detectives Kevin Desormeau and Stephen Lalchan, of the NYPD's Gang Unit, pulled up in an unmarked vehicle in front of Winston Bowerbank's car. They exited their vehicle, approached Winston Bowerbank in plainclothes and with their badges dangling around their necks, and without identifying themselves nor asking for his license or registration, they directed Winston Bowerbank to step out of his car. Mr. Bowerbank asked them why. They did not respond. Instead, they put metal handcuffs on Winston Bowerbank and his passenger without any explanation and drove them to the 105th Precinct.

3.     Shortly thereafter, Winston Bowerbank was charged with Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Third Degree, class B felonies. While Winston Bowerbank was being processed, Detectives Desormeau and Lalchan began filling out paperwork and inputting false allegations that they witnessed a drug sale and recovered cocaine from Winston Bowerbank into police reports. They forwarded the case file to the Queens County District Attorney's Office. Mr. Bowerbank was brought to Central Booking, arraigned, and bail was set. Relying on the false assertions of Detectives Desormeau and Lalchan, the Queens County District Attorney's Office indicted Winston Bowerbank, who entered a plea of Not Guilty. Winston Bowerbank was unable to post his bail and he remained at Riker's Island and maintained his innocence while awaiting trial. On February 9, 2016, he was convicted after a jury trial as a result of the Detective's perjured testimony, and he spent approximately 4 years behind bars. During Winston Bowerbank's wrongful detention, his mother suffered a stroke (resulting in her death shortly after Winston Bowerbank's release), and the stress of his wrongful incarceration caused him an abdominal aneurism. He was

operated upon twice for this condition. He suffered significant psychological stress, and other ailments that afflict an aging man during a lengthy and unjust incarceration.

4.    This case is about perjury and persecution. Detective Desormeau was cited in his performance evaluations by the NYPD as possessing "superior judgment," "the most aggressive style of police work," and a "primordial asset" with 350 arrests under his belt. But "on the streets, some people knew him only by a nickname, 'Training Day,' after the film about a corrupt cop played by Denzel Washington…." *See* Goldstein, J: (2017, October 10) He Excelled as a Detective, Until Prosecutors Stopped Believing Him, *New York Times*. https://www.nytimes.com/2017/10/10/nyregion/he-excelled-as-a-detective-until-prosecutors-stopped-believing-him.html. In 2017, Desormeau was indicted on first degree perjury charges in Manhattan and Queens County related to three separate arrests that occurred in 2014, the same year Winston Bowerbank was falsely arrested. Desormeau was ultimately convicted of perjury, official misconduct and offering a false instrument for filing in both counties in early 2018. Consequently, the Conviction Integrity Unity of the Queens County District Attorney's Office began to take a second look at convictions involving Desormeau and, in November of 2021, moved to vacate the convictions of 34 defendants in which Desormeau was an essential witness. This is such a case. As the Queens County District Attorney's Office noted on November 17, 2021 when it joined Mr. Bowerbank's motion to vacate his conviction pursuant to CPL §440.10(1)(h) (which was granted that same day) and dismissed his indictment,  the officer's testimony grossly conflicted concerning a material issue in the case—Lalchan's ability to observe the very drug transaction he falsely accused Winston Bowerbank of committing[1]. While this issue

---

[1] By 2014, the Queens County District Attorney's Office had already been made aware of Detective Desormeau's credibility issues and consequently chose not to proffer his testimony in the grand jury,

was underscored at trial by the defense, Winston Bowerbank was unable to overcome the enormity of the lie, including the details of the officer's observations and the manufactured physical evidence, all proffered by this highly decorated, professional perjurer and with the assistance of his partner.

5.      Winston Bowerbank's convictions have now been vacated and dismissed by the Supreme Court of the State of New York, County of Queens, which has held that law enforcement's behavior surrounding Winston Bowerbank's prosecution represented a violation of his constitutional right to due process.  He brings the present action seeking compensation for the extraordinary damages he has suffered.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as claims in this action arise under 42 U.S.C. § 1983.

7.      This Court may exercise supplemental jurisdiction over the state law causes of action herein.

8.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b), because that is the judicial district in which the claims arose.

## MUNICIPAL LAW OBLIGATIONS

9.      Winston Bowerbank timely served a notice of claim on or about February 15, 2023, within ninety of when his claims accrued.

10.     A 50-H examination was conducted on May 31, 2023, but since this date Winston Bowerbank's claims have not been settled, adjusted, or otherwise withdrawn.

---

suppression hearing, and trial of Winston Bowerbank. Instead, the office relied upon the testimony of Detective Desormeau's partner, Detective Lalchan, who was complicit in making up the allegations of a drug sale out of thin air.

**PARTIES**

11.     Plaintiff, Winston Bowerbank, is a resident of the State of New York and brings the present suit in his individual capacity.

12.     Defendant City of New York is a municipal entity in the State of New York, home to the New York City Police Department and the Queens County District Attorney's Office and was the employer of all individually named defendants in this case, all of whom were acting in the scope of their employments under color of law at all relevant times.

13.     Defendant Kevin Desormeau was at all relevant times a Detective in the New York Police Department acting under color of state law.  He is sued here in his personal capacity.

14.     Defendant Stephen Lalchan was at all relevant times a Detective in the New York Police Department acting under color of state law.  He is sued here in his personal capacity.

**STATEMENT OF FACTS**

15.     On March 15, 2014, at approximately 6:15 PM, Detectives Kevin Desormeau and Stephen Lalchan, of the Gang Unit of the New York Police Department ("NYPD"), were driving in plainclothes and in an unmarked police vehicle by the southwest intersection of 118 Avenue and 228 Street in Queens County.

16.     They observed Winston Bowerbank, then 61 years old, seated in the driver's seat of a silver 2009 Honda and another passenger in the vehicle, Christopher Williams.

17.     Winston Bowerbank was parked legally and neither he nor Christopher Williams were committing any crimes.

18.     Nonetheless, the defendants pulled up in front of them, exited their vehicles, approached the driver's side of the Honda and instructed Winston Bowerbank and Christopher Williams to get out of the car.

19.     Winston Bowerbank was confused by the police conduct and asked why. The detectives did not respond.

20.     Instead, they placed him and his friend under arrest.

21.     Neither Winston Bowerbank nor Christopher Williams had any drugs, weapons, or contraband on their person or inside of the vehicle.

22.     Detectives placed metal handcuffs on their hands behind their backs and transported them to the 105th Precinct.

23.     There, while Winston Bowerbank was being fingerprinted and booked, Defendants Desoremeau and Lalchan began to fill out police paperwork documenting false allegations about Winston Bowerbank and charging him with B felony drug offenses.

24.     Specifically, Defendants falsely alleged that they had observed Winston Bowerbank hand two paper envelopes containing cocaine to his passenger; the passenger handing a sum of currency to Winston Bowerbank; Winston Bowerbank holding a clear plastic twist of cocaine in his left hand; the passenger place the two envelopes of cocaine in his mouth; that they recovered the two envelopes of cocaine after instructing the passenger to spit the envelopes out, as well as the clear plastic twist of cocaine from Winston Bowerbank's hand, along with one plastic Ziploc bag of cocaine and four envelopes containing cocaine from Winston Bowerbank's waistband, totaling an aggregate weight of approximately thirteen grams.

25.     Defendants also falsely alleged that Winston Bowerbank stated, "I don't have any more coke on me."

26.     Further, Defendants obtained cocaine from a different source and documented said cocaine as having been recovered from Winston Bowerbank.

27.     The documents containing these false assertions were provided to the Queens County District Attorney's Office, which relied on the paperwork, along with lab reports of the drugs allegedly recovered from Winston Bowerbank and his passenger, and the false statements of the Defendants when investigating, indicting, and ultimately bringing the matter to trial.

28.     With the sworn and perjured statements of Defendants and their falsified police reports and other documentation, the prosecutors were able to make a bail application that resulted in Winston Bowerbank's lengthy pre-trial detention at Riker's Island, secure an indictment, secure a conviction after trial, and secure a sentence of two and a half years' incarceration.

29.     The indictment of Winston Bowerbank was obtained through perjury and fraud committed in the grand jury by Defendant Lalchan in the grand jury, who suborned false statements and evidence, including, *inter alia*, the statement that Desormeau and Lalchan had an opportunity to view the alleged drug sale and possession and thereby had probable cause to approach Winston Bowerbank; that they observed Winston Bowerbank hand his passenger two envelopes containing cocaine and that they observed him take a sum of currency from his passenger, that they observed Winston Bowerbank holding a clear plastic twist of cocaine in his left hand, that they recovered over 13 grams of cocaine

from Winston Bowerbank, and that Winston Bowerbank stated "I don't have any more coke on me."

30.    The defendants acted during all relevant times with actual malice—prosecuting Winston Bowerbank without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, obtaining credit and or promotions for another felony drug arrest.

31.    Winston Bowerbank was held in custody for the entire time between his March 15, 2014, arrest, his February 1, 2016 trial, his January 31, 2017 sentence, and served an additional period of his incarceration at New York State Department of Corrections facility.

32.    After he served his sentence, and having an immigration hold as a result of the instant arrest, Winston Bowerbank remained in detention and was transported to an immigration detention facility for approximately one year.

33.    Lacking a wide array of material exculpatory information, including exculpatory information related Defendants who submitted the falsified police paperwork and one of which testified against him at trial, Winston Bowerbank was convicted.

34.    Winston Bowerbank was convicted on February 9, 2016, for one count of Criminal Possession of a Controlled Substance in the Third Degree, one count of Criminal Possession of a Controlled Substance in the Fourth Degree, and one count of Criminal Possession of a Controlled Substance in the Seventh Degree.

35.    Winston Bowerbank was sentenced on January 31, 2017, to two and a half years' incarceration.  At the time of his sentence, he was still incarcerated and had an immigration hold.

36.     When Winston Bowerbank had finished serving his sentence, he was not released because of the immigration hold. Instead, he was transferred to an immigration facility.

37.     Winston Bowerbank was in prison until he was 64 years old. He was in an immigration detention facility as a result of his wrongful conviction until he was 65 years old.

38.     As a consequence of the defendants' conduct, Winston Bowerbank was incarcerated for approximately 4 years.

39.     Winston Bowerbank suffered extraordinary damages in connection with his wrongful conviction.

40.     Winston Bowerbank suffered severe emotional distress, physical ailments requiring surgery, humiliation, deprivation of dignity, loss of liberty, and pecuniary damages.

41.     On or about November 17, 2022, the Supreme Court of the State of New York, County of Queens, vacated Winston Bowerbank's conviction because of newly discovered evidence—i.e. Kevin Desormeau's perjury charges and related convictions and the uncovering of the widespread fraud he committed in a number of his arrests during the same time frame as Plaintiff's arrest, information which corroborated Winston Bowerbank's claim of innocence and that his conviction had been achieved in violation of his constitutional rights.

42.     On November 17, 2022, Justice Johnson dismissed the charges against Winston Bowerbank on consent of the District Attorney's Office.

## CAUSES OF ACTION

**FIRST:  MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983**
**as against Defendants Desormeau and Lalchan**

43.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

44.     Defendant Desormeau initiated criminal proceedings against Plaintiff in New York City, where he was charged with Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Third Degree and other related charges.

45.     Defendant Lalchan initiated criminal proceedings against Plaintiff in New York City, where he was charged with Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Third Degree and other related charges.

46.     Defendant Desormeau intentionally lied in police reports and to the District Attorney's Office about observing Winston Bowerbank selling cocaine to another cocaine and about him making an incriminating statement.

47.     Defendant Lalchan intentionally lied in police reports, the grand jury, at a suppression hearing and at trial and to the District Attorney's Office about observing Winston Bowerbank selling cocaine to another and possessing cocaine and about him making an incriminating statement.

48.     Defendant Desormeau falsely claimed he obtained cocaine from Winston Bowerbank and his passenger and vouchered the cocaine as if it was recovered from Winston Bowerbank.

49.     Defendant Lalchan falsely claimed he obtained cocaine from Winston Bowerbank and his passenger and vouchered the cocaine as if it was recovered from Winston Bowerbank.

50.     Defendant Lalchan falsely testified in the grand jury, the suppression hearing, and the trial that he observed Winston Bowerbank selling cocaine and that he recovered cocaine from Winston Bowerbank.

51.     Defendant Lalchan testified falsely at a suppression hearing and trial that he was in the passenger seat of the unmarked police vehicle and that he was not driving when he observed the drug transaction of Winston Bowerbank.

52.     Defendant Lalchan testified falsely about where he was seated in the unmarked police vehicle at Winston Bowerbank's suppression hearing so that the cocaine would not be suppressed.

53.     Defendant Desormeau and Defendant Lalchan lacked probable cause to believe that Winston Bowerbank was guilty of the Charged Drug Sale and Drug Possession, knew that they lacked probable cause, and thus fabricated evidence to help secure an indictment, ensure Winston Bowerbank's motion for suppression was denied, and secure a conviction.

54.     The criminal charges against Winston Bowerbank were terminated in his favor as his convictions were vacated on the basis of, *inter alia*, violations of his constitutional rights, and the case against him was dismissed.

55.     Winston Bowerbank's liberty was restrained post-arraignment, including by being detained for nearly 3 years until he was sentenced, and also by being incarcerated for up to one year by immigration as a result of his arrest and convictions in the instant matter.

56.     The prosecution was not supported by probable cause that Winston Bowerbank had committed the Charged Drug Sale or any other charge for which he had been arraigned.

57.     The indictment of Winston Bowerbank was secured through perjury and fraud committed by Detective Lalchan in the grand jury, who suborned false statements, including, *inter alia*, the statement that Desormeau and Lalchan had an opportunity to view the alleged drug sale and possession and thereby had probable cause to approach Winston Bowerbank; that they observed Winston Bowerbank hand his passenger two envelopes containing cocaine and that they observed him take a sum of currency from his passenger, that they observed Winston Bowerbank holding a clear plastic twist of cocaine in his left hand, that they recovered over 13 grams of cocaine, and that Winston Bowerbank stated, "I don't have any more coke on me."

58.     Defendant Desormeau and Defendant Lalchan acted during all relevant times with actual malice -- prosecuting Winston Bowerbank without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, obtaining credit and promotions for a felony drug arrest and to enhance their careers.

59.     Winston Bowerbank suffered substantial damage from the malicious prosecution as set forth above, including, but not limited to, spending approximately 4 years in incarceration.

60.     In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

61.     Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### SECOND:  MALICIOUS PROSECUTION UNDER STATE LAW
### as against Defendants Desormeau, Lalchan, and New York City

62.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

63.     Defendant Desormeau and other agents of New York City initiated criminal proceedings against Plaintiff in Queens County, where he was charged with Criminal Sale of a Controlled Substance in the Third Degree and other related charges.

64.     Defendant Lalchan and other agents of New York City initiated criminal proceedings against Plaintiff in Queens County, where he was charged with Criminal Sale of a Controlled Substance in the Third Degree and other related charges.

65.     Defendant Desormeau and other agents of New York City intentionally falsified police reports and testified falsely and lied to the District Attorney's Office, including, *inter alia*, about their observations of Winston Bowerbank selling or possessing cocaine and making an incriminating statement.

66.     Defendant Lalchan and other agents of New York City intentionally falsified police reports and testified falsely and lied to the District Attorney's Office, including, *inter alia*, about their observations of Winston Bowerbank selling or possessing cocaine and making an incriminating statement.

67.     Defendant Desormeau intentionally lied about the basis for the stop of Winston Bowerbank and his observations of the crime and his recovery of the contraband in police reports.

68.     Defendant Desormeau intentionally lied about the basis for the stop of Winston Bowerbank and his observations of the crime and his recovery of the contraband in conversations with the District Attorney's Office.

69.     Defendant Desormeau intentionally lied in police reports about observing Winston Bowerbank handing his passenger two envelopes containing cocaine, taking a sum of currency from his passenger, holding a clear plastic twist of cocaine in his left hand, possessing over 13 grams of cocaine, and stating, "I don't have any more coke on me."

70.     Defendant Desormeau intentionally lied to the District Attorney's Office about observing Winston Bowerbank handing his passenger two envelopes containing cocaine, taking a sum of currency from his passenger, holding a clear plastic twist of cocaine in his left hand, possessing over 13 grams of cocaine, and stating, "I don't have any more coke on me."

71.     Defendant Lalchan intentionally lied about the basis for the stop of Winston Bowerbank and his observations of the crime and his recovery of the contraband in police reports.

72.     Defendant Lalchan intentionally lied about the basis for the stop of Winston Bowerbank and his observations of the crime and his recovery of the contraband in conversations with the District Attorney's Office.

73.     Defendant Lalchan testified falsely about the basis for the stop of Winston Bowerbank and his observations of the crime and his recovery of the contraband in the grand jury, at a suppression hearing, and at trial.

74.     Defendant Lalchan intentionally lied in police reports about observing Winston Bowerbank handing his passenger two envelopes containing cocaine, taking a sum of currency from his passenger, holding a clear plastic twist of cocaine in his left hand, possessing over 13 grams of cocaine, and stating, "I don't have any more coke on me."

75.     Defendant Lalchan intentionally lied to the District Attorney's Office about observing Winston Bowerbank handing his passenger two envelopes containing cocaine, taking a sum of currency from his passenger, holding a clear plastic twist of cocaine in his left hand, possessing over 13 grams of cocaine, and stating, "I don't have any more coke on me."

76.     Defendant Lalchan testified falsely in the grand jury, at the suppression hearing, and at trial about observing Winston Bowerbank handing his passenger two envelopes containing cocaine, taking a sum of currency from his passenger, holding a clear plastic twist of cocaine in his left hand, possessing over 13 grams of cocaine, and stating, "I don't have any more coke on me."

77.     Defendant Desormeau and Defendant Lalchan advised and encouraged the Queens County District Attorney's Office to prosecute Winston Bowerbank.

78.     Defendant Desormeau and Defendant Lalchan lacked probable cause to believe that Winston Bowerbank was guilty of the Charged Drug Sale, knew that they lacked probable cause, and thus fabricated evidence to help secure an indictment and conviction.

79.     The criminal charges against Winston Bowerbank were terminated in his favor as his convictions were vacated on the basis of, *inter alia*, violations of his constitutional rights, and the case against him was dismissed.

80.     Winston Bowerbank's liberty was restrained post-arraignment, including by being detained for nearly 3 years until he was sentenced, and by then being incarcerated for up to one year by immigration as a result of his arrest and convictions in the instant matter.

81.     The prosecution was not supported by probable cause that Winston Bowerbank had committed the Charged Drug Sale or any other charge for which he had been arraigned.

82.     The indictment of Winston Bowerbank was secured through perjury and fraud committed by Defendants Desormeau and Lalchan in the grand jury, who suborned false statements, including, *inter alia*, that they had an opportunity to view the alleged drug sale and possession and thereby had probable cause to approach Winston Bowerbank; that they observed Winston Bowerbank hand his passenger two envelopes containing cocaine and that they observed him take a sum of currency from his passenger, that they observed Winston Bowerbank holding a clear plastic twist of cocaine in his left hand, that they recovered over 13 grams of cocaine and six hundred thirty six dollars from Winston Bowerbank, and that Winston Bowerbank stated "I don't have any more coke on me."

83.     Defendant Desormeau and Defendant Lalchan acted during all relevant times with actual malice -- prosecuting Winston Bowerbank without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, getting credit and promotions for a felony drug arrest.

84.     The City of New York is liable for the malicious prosecution of Winston Bowerbank under a theory of *respondeat superior*, as at all times the defendants and agents recited herein were acting within the scope of their employment, for the City's benefit and under its control.

85.     Winston Bowerbank suffered substantial damage from the malicious prosecution as set forth above, including, but not limited to, spending approximately 4

years in prison and subsequent confinement in an immigration detention facility due to his arrest and conviction.

86.    In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

87.    Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### THIRD:  FALSE ARREST UNDER 42 U.S.C. §1983
### as against Defendants Desormeau and Lalchan

88.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

89.    Defendant Desormeau intended to arrest Plaintiff and caused him to be confined.

90.    Defendant Lalchan intended to arrest Plaintiff and caused him to be confined.

91.    Plaintiff was aware of his confinement and did not consent to it.

92.    The arrest and confinement of Plaintiff was not supported by probable cause.

93.    The arrests and confinement of Plaintiff was not otherwise privileged.

94.    The indictment of Winston Bowerbank was secured through perjury and fraud committed by Detectives Desormeau and Lalchan in the grand jury, who suborned false statements and evidence, including, *inter alia*, the statement that Desormeau was seated in the passenger seat of the unmarked police vehicle, thereby leading the grand jury and the petit jury to believe that he had an opportunity to view the alleged drug sale and possession and thereby had probable cause to approach Mr. Bowerbank; that he observed Mr. Bowerbank hand his passenger two envelopes containing cocaine and that he observed

him take a sum of currency from his passenger, that he observed Mr. Bowerbank holding a clear plastic twist of cocaine in his left hand, that he recovered over 13 grams of cocaine from Mr. Bowerbank, and that Mr. Bowerbank stated "I don't have any more coke on me."

95.     Plaintiff suffered substantial damage from the false arrest as set forth herein.

96.     In addition to compensatory damages, Mr. Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

97.     Mr. Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### FOURTH:  FALSE ARREST UNDER STATE LAW
### as against Defendants Desormeau and Lalchan and New York City

98.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

99.     Defendant Desormeau intended to arrest Plaintiff and caused him to be confined.

100.     Defendant Lalchan intended to arrest Plaintiff and caused him to be confined.

101.     Plaintiff was aware of his confinement and did not consent to it.

102.     The arrests and confinement of Plaintiff was not supported by probable cause.

103.     The arrests and confinement of Plaintiff were not otherwise privileged.

104.     The indictment of Winston Bowerbank was secured through perjury and fraud committed by Defendants Desormeau and Lalchan in the grand jury, who suborned false and materially incomplete statements and evidence, including, *inter alia*, the statement that Desormeau was seated in the passenger seat of the unmarked police vehicle, thereby leading the grand jury, the judge presiding over the suppression hearing, and the

petit jury to believe that he had an opportunity to view the alleged drug sale and possession and thereby had probable cause to approach Winston Bowerbank; that he observed Winston Bowerbank hand his passenger two envelopes containing cocaine and that he observed him take a sum of currency from his passenger, that he observed Winston Bowerbank holding a clear plastic twist of cocaine in his left hand, that he recovered over 13 grams of cocaine from Winston Bowerbank, and that Winston Bowerbank stated "I don't have any more coke on me."

105.    The City of New York is liable for the false arrest of Plaintiff under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the City's benefit and under its control.

106.    Plaintiff suffered substantial damage from the false arrest as set forth herein.

107.    In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

108.    Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### FIFTH:  EVIDENCE-FABRICATION UNDER 42 U.S.C. §1983
### as against Defendants Desormeau and Lalchan

109.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

110.    Defendants Desormeau and Lalchan were investigating officials in connection with the Charged Drug Sale.

111.    Defendants Desormeau and Lalchan intentionally fabricated that they observed Winston Bowerbank committing a drug sale and that they subsequently recovered cocaine from Winston Bowerbank.

112.    They managed to obtain cocaine from an unknown source that they planted or attributed to Winston Bowerbank.

113.    The cocaine was tested by a laboratory, and the report the laboratory produced was introduced at trial.

114.    Moreover, once it was discovered or suspected that Desormeau was not credible, Lalchan changed his narrative from his prior testimony to indicate that he, Lalchan, was seated in a passenger seat of the unmarked vehicle, thereby making it more likely that he was able to observe the drug transaction that Saturday evening—and provided this false narrative once again to prosecutors with the intent that it be introduced at trial.

115.    The intentional false testimony, fabricated cocaine, and other police reports containing falsehoods was likely to (and did) influence the juries' verdicts.

116.    The District Attorney's Office itself has recognized that Desormeau committed perjury in the past, and more than once, and that the Detectives' narratives concerning their opportunity to view the alleged offense was inconsistent and unbelievable and constituted a violation of Winston Bowerbank's constitutional right to Due Process.

117.    Winston Bowerbank suffered a deprivation of liberty as a consequence of the fabricated police reports, contraband, and accounts.

118.    In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

119.    Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

120.    Defendant Desormeau and Defendant Lalchan affirmatively fabricated evidence.

121.    Defendant Desormeau and Defendant Lalchan fabricated testimony and evidence in connection with the Charged Drug Sale -- including, *inter alia*, procuring cocaine falsely connected to Winston Bowerbank, filing false police reports to the Queens County District Attorney's Office and testifying falsely about the events.

122.    The information that Defendant Desormeau and Defendant Lalchan fabricated was likely to (and did) influence the juries' verdicts.

123.    Defendant Desormeau and Defendant Lalchan forwarded the fabricated evidence to the District Attorney's Office.

124.    Winston Bowerbank suffered a deprivation of liberty as a consequence of Defendant Desormeau and Defendant Lalchan's evidence-fabrication, including, but not limited to, spending approximately 4 years in prison.

125.    Plaintiff suffered substantial damage as set forth herein.

126.    In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

127.    Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### SIXTH:  EVIDENCE-FABRICATION UNDER STATE LAW
### as against Defendants Desormeau, Lalchan and the City of New York

128.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

129.    Defendants Desormeau and Lalchan were investigating officials in connection with the Charged Drug Sale.

130.    Defendants Desormeau and Lalchan intentionally falsified police reports and lied to the Queens County District Attorney's Office and the grand jury, the Court, and the petit jury about observing Winston Bowerbank selling and possessing cocaine.

131.    As there was no other supporting evidence, the Defendants' perjured testimony and planted cocaine was likely to (and did) influence the juries' verdicts.

132.    The District Attorney's Office itself has recognized that Defendant Desormeau has previously committed perjury in other matters and that his partner's, Defendant Lalchan's, inconsistent and false testimony violated Winston Bowerbank's constitutional right to Due Process.

133.    Winston Bowerbank suffered a deprivation of liberty as a consequence of the Defendants' falsified police reports, fabricated evidence, false statements to the District Attorney's Officer and perjured testimony, including, but not limited to, spending approximately 4 years incarcerated.

134.    In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

135.    Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

136.    In addition to falsifying police reports and making false statements, Defendant Desormeau and Defendant Lalchan affirmatively fabricated evidence.

137.    Defendant Desormeau and Defendant Lalchan fabricated information in connection with the Charged Drug Sale -- including, *inter alia*, procuring cocaine from another source and attributing it to Winston Bowerbank.

138.    The information that Defendant Desormeau and Defendant Lalchan fabricated was likely to (and did) influence the juries' verdict.

139.    Defendant Desormeau and Defendant Lalchan forwarded the fabricated evidence to the police laboratory and to the District Attorney's Office.

140.     Winston Bowerbank suffered a deprivation of liberty as a consequence of Defendant Desormeau and Defendant Lalchan's evidence-fabrication, including, but not limited to, spending approximately 4 years incarcerated.

141.     The City of New York is liable for under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the City's benefit and under its control.

142.     In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

143.     Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### SEVENTH:  ABUSE OF PROCESS UNDER 42 U.S.C. §1983
### as against Defendants Desormeau and Lalchan

144.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

145.     Defendants Desormeau and Lalchan participated in the issuance of criminal process against Winston Bowerbank, including but not limited to his arrest, indictment and prosecution.

146.     Defendants Desormeau and Lalchan intended to do harm to Winston Bowerbank without justification, including but not limited to imprisoning him for crimes he did not commit because he represented a convenient target.

147.     Defendants Desormeau and Lalchan used criminal process in an attempt to obtain a collateral objective, including but not limited to meeting their quota for arrests, getting credit and receiving promotions for the purpose of reputational and career advancement.

148.     Winston Bowerbank was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional and physical distress associated with wrongfully spending approximately 4 years incarcerated.

149.     In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

150.     Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

**EIGHTH:  ABUSE OF PROCESS UNDER STATE LAW**
**as against Defendants Desormeau, Lalchan, and the City of New York**

151.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

152.     Defendants Desormeau and Lalchan  participated in the issuance of criminal process against Winston Bowerbank, including but not limited to his arrest, indictment and prosecution.

153.     Defendants Desormeau and Lalchan intended to do harm to Winston Bowerbank without justification, including but not limited to imprisoning him for crimes he did not commit because he represented a convenient target.

154.     Defendants Desormeau and Lalchan used criminal process in an attempt to obtain a collateral objective, including but not limited to meeting their quotas for arrests, getting credit and receiving promotions for the purpose of reputational and career advancement.

155.     Winston Bowerbank was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional and physical distress associated with wrongfully spending approximately 4 years incarcerated.

156.    At all relevant times, Defendants Desormeau and Lalchan were acting in the scope of their employments.

157.    At all relevant times Defendants Desormeau and Lalchan were acting with the City of New York's assent, for its benefit, and under its control.

158.    The City of New York is liable for the wrongdoing of Defendants Desormeau and Lalchan through the doctrine of *respondeat superior*.

159.    In addition to compensatory damages, Winston Bowerbank is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

160.    Winston Bowerbank is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## DAMAGES

161.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

162.    As a consequence of the Defendants' conduct, Plaintiff suffered substantial damages, including loss of liberty, emotional distress, physical ailments and injuries, damage to his reputation, pecuniary damages, and attorneys' fees.

163.    The Defendants should be held liable not only to compensate Winston Bowerbank for his damages, but also to pay exemplary damages large enough to dissuade such egregious misconduct from taking place again in the future.

164.    The Defendants should be liable to pay attorneys' fees associated with this action as per the terms of 42 U.S.C. §1988(b).

**WHEREFORE**, Plaintiff prays for relief as follows:

A.  That the Court award compensatory damages to Plaintiff and against the defendants jointly and severally, in an amount to be determined at trial;

B.  That the Court award punitive damages to Plaintiff, and against all defendants, in an amount to be determined at trial that will deter such conduct by defendants in the future;

C.  That the Court award attorney's fees pursuant to 42 U.S.C. § 1988;

D.  For a trial by jury;

E.  For a pre-judgment and post-judgment interest and recovery of their costs; and

F.  For any and all other relief to which they may be entitled.

Dated:  Garden City, New York
        February 8, 2024

                                        **BARKET EPSTEIN KEARON ALDEA
                                        & LOTURCO, LLP**

By:     _____
                                        Aida Leisenring, Esq.
                                        Alexander Klein, Esq.